UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SHADI SOUMEKH,

                               Plaintiff,

      -against-

LD CONSULTING SERVICES, INC.,
PHILIP CERVONE, *in his individual and
official capacity*, LYNETTE DALEO, *in her
individual and official capacity*, JOHN
DOES 1-5, and ABC CORPORATIONS 1-5,

                              Defendants.
-------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

18-CV-6337 (DG)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

       Presently before the Court in this employment discrimination action, on referral from the Honorable Diane Gujarati, is Defendants' motion for summary judgment. *See* Motion for Summary Judgment Dismissing the Complaint, ("Defs.' Mot.") DE [47]; Defendants' Memorandum of Law in Support of the Motion for Summary Judgment Dismissing the Complaint, ("Defs.' Mem."), DE [47-12]. By way of Complaint dated November 7, 2018, Plaintiff Shadi Soumekh ("Plaintiff" or "Soumekh") commenced this action against Defendants LD Consulting Services, Inc. ("LD Consulting"), Philip Cervone ("Cervone") in his individual and official capacities, Lynette Daleo ("Daleo") in her individual and official capacities, John Does 1-5 and ABC Corporations 1-5 (collectively "Defendants") alleging fifteen causes of action for: (i) Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §§ 2000e, *et seq*. gender discrimination against LD Consulting; (ii) Title VII gender harassment against LD Consulting; (iii) Title VII religious harassment against LD Consulting;

1

(iv) Title VII retaliation against LD Consulting; (v) New York Executive Law §§ 290 *et seq.* ("NYSHRL") gender discrimination against LD Consulting; (vi) NYSHRL gender harassment against LD Consulting; (vii) NYSHRL religious harassment against LD Consulting; (viii) NYSHRL retaliation against LD Consulting; (ix) NYSHRL gender discrimination against Cervone; (x) NYSHRL gender harassment against Cervone; (xi) NYSHRL religious harassment against Cervone; (xii) NYSHRL retaliation Cervone; (xiii) NYSHRL gender discrimination against Daleo; (xiv) NYSHRL gender harassment against Daleo; and (xv) NYSHRL retaliation against Daleo.  *See* Complaint ("Compl."), DE [1].  For the reasons set forth below, the Court recommends granting Defendants' motion as to the gender discrimination and retaliation claims, causes of action (xiii) and (xv), against Daleo, and denying the motion on all other grounds.

## I.    BACKGROUND

### A.    Relevant Facts

The following facts are taken from the parties' pleadings, declarations, exhibits and respective Local Rule 56.1 statements.  Except where indicated, these facts are undisputed.

#### 1.    The Parties

Soumekh is a Jewish woman who was employed by LD Consulting from October 2015 until October 2016.  Defendants' Statement Pursuant to Local Rule 56.1, DE [41-11] ("Defs.' 56.1") ¶¶ 1, 16; Plaintiff's Response to Defendants' Statement Pursuant to Local Rule 56.1 and Counterstatement of Material Issues for Trial, DE

[51-8], ("Pl. 56.1") ¶¶ 1, 16.[1]  At the time of the alleged incidents, Plaintiff resided in Lindenhurst, New York with her boyfriend Benjamin Wyatt ("Wyatt").  Defs.' 56.1 ¶ 2; Pl. 56.1 ¶ 2.  Wyatt also worked for LD Consulting.  Defs.' 56.1 ¶ 12; Pl. 56.1 ¶ 12.

LD Consulting is a New York Corporation, which during Soumekh's employment, was owned and operated solely by Daleo with its principal place of business in Farmingdale, New York.  Defs.' 56.1 ¶¶ 3-5; Pl. 56.1 ¶¶ 3-5.  The company works with independent attorneys to obtain clients who seek mortgage loan modifications, and its employees solicit clients and process the loan paperwork.  Defs.' 56.1 ¶¶ 8-9; Pl. 56.1 ¶¶ 8-9.  LD Consulting hired Cervone as the company's sales and marketing manager prior to Plaintiff's employment.  Defs.' 56.1 ¶ 11; Pl. 56.1 ¶ 11. Cervone and Daleo are married, but he is not an owner of the company.  Defs.' 56.1 ¶¶ 6-7; Pl. 56.1 ¶¶ 6-7.

In October 2015, Wyatt, who worked in sales at LD Consulting, introduced Soumekh to Cervone for a position there.  Defs.' 56.1 ¶¶ 12-13; Pl. 56.1 ¶¶ 12-13. Cervone hired Plaintiff for an appointment setting position, which required taking calls from potential clients and setting meetings with Cervone.  Defs.' 56.1 ¶ 16; Pl. 56.1 ¶ 16.  Plaintiff was paid on a per-lead commission basis.  Defs.' 56.1 ¶ 15; Pl. 56.1 ¶ 15.

During Soumekh's employment, she, Wyatt, Cervone and Daleo socialized outside of work on several occasions including going to dinner, visiting each others'

---

[1] Soumekh includes her responses to Defendants' Rule 56.1 Statement and a Counterstatement of Material Issues for Trial in the same document.  *See* DE [51-1].  For ease of reference, the Court cites to Plaintiff's responses to Defendants' Rule 56.1 statement as "Pl. 56.1" and her counterstatement of material issues as "Pl. Counter."

homes and going out on their boats.  Defs.' 56.1 ¶ 17; Pl. 56.1 ¶ 17.  Plaintiff also invited Daleo to the bris of her nephew in June 2016.  Defs.' 56.1 ¶ 18; Pl. 56.1 ¶ 18.

### 2.    Incidents Concerning Sexual Harassment and Discrimination

#### i.    *Inappropriate Texts*

Soumekh reported to Cervone, and they communicated frequently via text during her employment.  *See* Defs.' 56.1 ¶ 21; Pl. 56.1 ¶ 21.  They discussed employment-related tasks on a near daily basis, such as appointment setting, calls with clients, leads concerning potential future clients and Plaintiff's work performance.  Defs.' 56.1 ¶¶ 21-23; Pl. 56.1 ¶¶ 21-23; *see, e.g.*, Plaintiff_000358, 364, 366, 368-69.[2]

Cervone also sent memes via text to Soumekh between December 16, 2015 until October 18, 2016 on a near daily basis.  Defs.' 56.1 ¶ 24; Pl. 56.1 ¶ 24; *see generally* Plaintiff_000290-562.  The memes included photos with messages containing explicit content, profanity, and references to the sexual orientation of Plaintiff's boyfriend, Wyatt.  *See generally* Plaintiff_000290-562.  Some of the numerous memes included photos with text such as, "Ben just caught me blow drying my penis and asked what I was doing? Apparently 'heating your dinner' was not the right answer," *id*. at 292-93, "what if I told you anyone named Ben is gay," *id*. at 302,

---

[2] Exhibit D to Defendants' Memorandum and Exhibit 7 to Plaintiff's Opposition are the same document and are text messages Plaintiff produced from her phone and contain the Bates numbers Plaintiff_000290-562.  *See* Declaration of Ira Levine ("Levine Decl."), DE [47-1], ¶ 3; Declaration of Christopher P. Dooley, Esq. ("Dooley Decl."), DE [51], ¶ 8.  Messages from Cervone are on the left side, and messages sent by Soumekh are on the right and are shaded.  *See* Plaintiff_000290-562; Defs.' 56.1 ¶¶ 19-20; Pl. 56.1 ¶¶ 19-20.  The Court cites to the relevant Bates number for purposes of this R&R.

and "I've had my penis in Ben's bum." *Id*. at 303; *see also*, *id*. at 295, 297, 301, 303, 310-13.

The parties dispute whether Plaintiff welcomed the memes. Cervone claims that these conversations were jokes and friendly banter, and that Soumekh responded with "words of approbation" and sent memes herself in a way that showed she welcomed the messages. Defs.' 56.1 ¶¶ 24-31; *see, e.g.*, Plaintiff_000293 ("ur the best"); 295 ("I'm so glad I met you guys"); 297 ("Lollll"); 312 ("Ur awesome"), 315 ("Lolllllll that's too funny . . . . Ur awesome"); 345 ("lol ohhhh g-d too funny"). Plaintiff at times sent memes back to Cervone although less frequently. *See* Defs.' 56.1 ¶ 26; Pl. 56.1 ¶ 26; *see e.g.*, Plaintiff_000304 ("Hey Ben suck a dick"), 306 ("Hey Ben why are you so gay?").

Soumekh, on the other hand, contends that she "periodically complied with Defendant Cervone's directives that Plaintiff send tactless memes back . . . of a similar nature and tone." Pl. 56.1 ¶¶ 24-31. She also claims that on several occasions she instructed Cervone to stop sending inappropriate text messages, although she does not specify when, and Defendants deny these allegations. Pl. Counter. ¶ 2; *see* Defs.' Mem. Ex. F, Deposition Transcript of Philip Cervone ("Cervone Dep.") 105:13-21. She alleges that Cervone told her that "he needed to vent and would feel better if Plaintiff just laughed about the inappropriate text message correspondence and meme images" and directed her to respond in kind. Pl. Counter. ¶¶ 3-4. Soumekh further contends that some of her messages indicated disapproval of the text message correspondence, and that she confronted Cervone again about the text messages less

than one week before her termination although she fails to specify what was said. *See id.* ¶¶ 5, 15; *see* Plaintiff_000306 (a meme stating "Oh, my god, Ben, Ben, Ben, Ben, Ben, Ben, Ben, Ben!!!!!!!"); 551 (a meme of a woman saying, "oh hell no", and a following message of "Eewwwww" in response to Cervone's meme of a young man covered with vomit). Finally, Plaintiff claims that Daleo was aware of Cervone's messages to Soumekh because Daleo told him to stop teasing Wyatt. Pl. Counter. ¶ 6; *see* Plaintiff_000294 ("She asked me to stop teasing Ben . . . . She likes Ben she said I'm rude."). Daleo testified at her deposition that she was not aware of Cervone sending messages and memes of this nature to Soumekh, although she knew that her husband teased and joked with Wyatt when they socialized. *See* Defs.' Mem. Ex. G, Deposition of Lynette Daleo ("Daleo Dep.") 114:17-116:6; 119:18-120:4.

## ii. *Other Incidents Concerning Sexual Harassment*

In addition to the text messages addressed above, Plaintiff also alleges that Cervone openly talked about "supposed sexual experiences" concerning current employees at LD Consulting, including Soumekh and Wyatt. Pl. Counter. ¶ 14. She claims that she overheard these conversations because the office was in a bullpen-style arrangement, and Plaintiff submits six audio recordings of Cervone that she took on her phone. Pl. Counter. ¶ 14; Pl. Opp. Exs. 8-13. There are no dates or other means of identification regarding the audio recordings, and Defendants dispute these allegations and the recordings' authenticity. *See* Dooley Decl. ¶ 9; Defendants' Reply Memorandum of Law in Further Support of Motion for Summary Judgment, DE [52], ("Defs.' Reply") 8-9.

### iii.    Incident at Mannino's Restaurant

In September 2016, Soumekh, Wyatt, Cervone and Cervone's son were dining at Mannino's restaurant in Oakdale on a Sunday afternoon.  Defs.' 56.1 ¶¶ 36; Pl. 56.1 ¶¶ 36; Compl. ¶ 51.  Plaintiff claims that Cervone followed her to the restroom, aggressively grabbed her arm and tried to kiss her, but she was able to push him away and return to the table.  Defs.' 56.1 ¶¶ 36-38; Pl. 56.1 ¶¶ 36-38; Pl. Counter. ¶ 7.  Defendants admit that the four dined at Mannino's that day, but deny that the incident between Cervone and Soumekh occurred.  Defs.' 56.1 ¶ 40.  The parties dispute whether anyone witnessed the incident and whether Plaintiff told anyone, including Wyatt, about it.  Defs.' 56.1 ¶¶ 38-39; Pl. 56.1 ¶¶ 38-39.  Wyatt was not deposed in this case, nor did he submit an affidavit in support of Defendants' motion or Plaintiff's opposition.

### 3.    Incidents Concerning Religion

Separate from the alleged incidents of sexual harassment addressed above, Plaintiff claims she was harassed on the basis of her religion.  On August 19, 2016, Cervone texted Soumekh, "There is a temple of heebes on Boardwalk Lynette will send u phot[o] later. Sun worshipping heebes!"  Plaintiff_000460.  Plaintiff responded with, "Lol ur bad, it's Friday!!! Shabbat!!"  *Id.*  Soumekh also claims that she came to the office one day and saw "Jewish Lives Matters" signs placed on the desks of all the employees of LD Consulting, but Defendants deny this incident occurred.  Defs.' 56.1 ¶¶ 34-35; Pl. 56.1 ¶¶ 34-35; *see* Compl. ¶¶ 45-46.  Soumekh alleges that she confronted Cervone about the signs and that she informed Daleo, but Defendants

deny these claims.  Pl. Counter. ¶¶ 12-13; Cervone Dep. 114: 1-9; Daleo Dep. 96:1-7. Plaintiff further contends that Cervone frequently mocked her faith, that he publicly "boasted" about it at the office, and said that "I'm employing the Jew" when referring to Soumekh, although she fails to provide additional details or support for these incidents related to her religion outside of her deposition testimony.  Pl. Counter. ¶¶ 9-10; *see* Pl. Opp. Ex. 14, Deposition of Shadi Soumekh ("Soumekh Dep.") 62:3-13.

4.    Plaintiff's Termination

On October 19, 2016, while at the office, Plaintiff had an argument with Cervone and claimed that he had withheld her compensation.  Defs.' 56.1 ¶ 41; Pl. 56.1 ¶ 41.  The parties dispute what specifically was said, but they agree that Cervone asked to speak with Soumekh privately, she refused, he immediately fired her, and she packed up her belongings and left that day without speaking to Daleo.  Defs.' 56.1 ¶¶ 42-45; Pl. 56.1 ¶¶ 42-45; Pl. Counter. ¶¶ 15-16.

**B.    Procedural History**

Based on the above, Plaintiff filed a charge with the Equal Opportunity Employment Commission ("EEOC") on November 7, 2017.  Compl. ¶ 63.  The EEOC issued its Right to Sue Letter on August 10, 2018.  *See* Compl. Ex. 1, DE [1-5]. Soumekh then commenced this action by Complaint dated November 7, 2018 alleging claims for:  (i) Title VII gender discrimination, gender and religious harassment and retaliation against LD Consulting; (ii) NYSHRL gender discrimination, gender and religious harassment and retaliation against LD Consulting; (iii) NYSHRL gender discrimination, gender and religious harassment and retaliation against Cervone;

and (vi) NYSHRL gender discrimination, gender harassment and retaliation against Daleo. *See generally* Compl.

Defendants filed a *pro se* Answer on March 4, 2019, DE [9], which was amended on June 25, 2019 when they retained counsel. DE [17]. After discovery closed, Defendants moved for summary judgment on November 12, 2021, seeking to dismiss all of Plaintiff's claims. *See* Defs.' Mem. Plaintiff opposes. *See* Pl. Opp. Judge Gujarati referred the motion to this Court on April 26, 2022 for report and recommendation. *See* DE [53]. For the reasons set forth below, the Court recommends granting Defendants' motion as to the gender discrimination and retaliation claims against Daleo, Plaintiff's 13th and 15th causes of action, and denying the motion on all other grounds.

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6, n. 10 (N.D.N.Y. Sep. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## III.   DISCUSSION

Applying the standards outlined above, and for the reasons set forth below, the Court recommends granting Defendants' motion as to the gender discrimination and retaliation claims against Daleo, Soumekh's 13th and 15th causes of action, and

denying the motion on all other grounds.  Each of Defendants' arguments is addressed separately.

## A. Plaintiff's Audio Recordings

Initially, Defendants argue that the audio recordings Plaintiff submitted of alleged conversations that Cervone had at the office are inadmissible and should not be considered because Soumekh has not submitted an affidavit or authenticated them in any way.  Defs.' Reply 8-9; *see* Pl. Opp. Exs. 8-13.

Statements that are inadmissible hearsay cannot be relied upon to defeat summary judgment.  *See* Fed. R. Civ. P. 56(c); *e.g.*, *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000); *Rodriguez v. Nassau Cnty.*, No. 16CV2648SFJARL, 2019 WL 4674766, at *11 (E.D.N.Y. Sep. 25, 2019), *aff'd sub nom. Rodriguez v. County of Nassau*, 830 F. App'x 335 (2d Cir. 2020).  If evidence such as transcript or audio recordings submitted at summary judgment are unauthenticated and not supported by an affidavit, it is inadmissible.  *Rivera v. Choice Courier Sys., Inc.*, No. 01 CIV. 2096 (CBM), 2004 WL 1444852, at *6 (S.D.N.Y. Jun. 25, 2004) (citing *Cauble v. Mabon Nugent & Co.*, 594 F. Supp. 985, 995 (S.D.N.Y. 1984)); *see Whidbee*, 223 F.3d at 71.  ("[S]tatements reported to the plaintiff[ ] and not supported by affidavits are inadmissible hearsay").  Audio recordings can be authenticated by someone with personal knowledge present during the taping, among other ways.  *See* Fed. R. Evid. 901(b)(1).

Applying these standards, the Court concludes that audio recordings Plaintiff submitted, Pl. Opp. Exs. 8-13, are inadmissible for purposes of issuing this Report

and Recommendation.   Soumekh failed to submit an affidavit in support of her opposition, and although her counsel affirmed the exhibits submitted, counsel does not state that he was a party to the taping or has personal knowledge as to the who, what, when and where of the recordings.   *See* Dooley Decl. ¶ 9.   Moreover, Plaintiff's counsel fails to provide any details regarding the recordings, such as approximate date taken, location or the parties speaking, other than that they include Cervone, *see id.*, and Soumekh does not attempt to authenticate the audio recordings in another way.   Accordingly, the Court recommends concluding that the audio recordings submitted by Plaintiff are inadmissible and not to be considered in deciding Defendants' motion.[3]

## B.    Gender Discrimination Claims

Next, Defendants argue that Soumekh's claims for gender discrimination under Title VII and the NYSHRL must be dismissed because Plaintiff has failed to submit sufficient evidence to establish a prima facie case, namely demonstrating circumstances warranting an inference of discriminatory intent, such as through comparator evidence.   Defs.' Mem. at 9-10.   Defendants also argue that even if Plaintiff establishes a prima facie case, they offered a legitimate, nondiscriminatory reason for her termination, and she has not proffered sufficient evidence to show this reason was a pretext for gender discrimination.   *Id.* at 9-11.

---

[3] The Court notes that while it recommends that these six recordings be precluded on summary judgment, this does not affect its conclusions as to the other arguments in Defendants' motion as explained below, and should not bar admission at trial if properly authenticated.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [the] . . . terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). Likewise, Section 296(1) of the NYSHRL makes it unlawful "[f]or an employer . . . because of an individual's . . . sex . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Courts apply the same standards when analyzing Title VII and NYSHRL discrimination claims. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003).

The Supreme Court set forth the elements that a plaintiff must establish to make out a prima facie discrimination case in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under this framework, a plaintiff must show that: (1) she was within a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Id.* at 802, 93 S. Ct. at 1825; *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). Such a showing raises a temporary "presumption" of discriminatory animus, shifting the burden of production to the employer to come forward with its lawful justification for the adverse employment action. *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). If the defendant meets this standard, the burden shifts back to the plaintiff to show that the proffered reason was not the true reason, or in any event not the sole

reason, for the employment decision, which merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against her. *See id.* at 307-08. In other words, the plaintiff must put forth "evidence sufficient to permit a reasonable trier of fact to find that defendants' nondiscriminatory reasons for the challenged employment decisions were a pretext for . . . discrimination." *Harding v. Wachovia Cap. Markets, LLC*, 541 F. App'x 9, 11 (2d Cir. 2013). The ultimate question is whether a discriminatory purpose "was 'a motivating factor' for an adverse employment decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174, 129 S. Ct. 2343, 2349 (2009) (quoting 42 U.S.C. § 2000e–2(m)); *see also Lenzi v. Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019) ("An employee need only show that sex 'was a motivating factor for any employment practice, even though other factors also motivated the practice.'") (quoting 42 U.S.C. § 2000e–2(m)).

Whether an inference of discrimination is established is a flexible standard that can be satisfied differently depending on the factual scenario. *Howard v. MTA Metro–N. Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011). An inference of discriminatory intent may be derived from a variety of circumstances including: "'the employer's criticism of the plaintiff's performance in [sex-based] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

Applying these standards and based on the evidence presented, an issue of material fact exists as to whether Plaintiff's termination gives rise to an inference of gender discrimination by Cervone and LD Consulting.  The parties do not dispute that the first three elements for a prima facie case are established:  (i) Soumekh was within a protected class based on her gender, (ii) she was qualified for her position, and (iii) she was subject to an adverse employment action, namely her termination. *See* Defs.' Mem. at 9-11; Pl. Opp. at 9.  As for the fourth element, Plaintiff submits sufficient evidence that warrants an inference of sex discrimination by Cervone as it relates to her termination from LD Consulting.  The alleged incidents display gender-based animus, such as certain text messages and memes regarding her boyfriend's sexual orientation and their "supposed sexual experiences" as well as the unwanted sexual advances by Cervone at Manninos.  Moreover, Soumekh claims that she instructed Cervone to stop sending inappropriate memes about a week prior to her termination, and the incident at Manninos was less than a month before she was fired.  *See* Pl. Mem. at 9-10.  As a result, Plaintiff has satisfied her burden to establish a prima facie case of gender discrimination under Title VII and the NYSHRL against Cervone and LD Consulting.

Under the burden-shifting framework, while Defendants submit a lawful justification for Plaintiff's termination, namely that she accused Cervone of stealing her compensation resulting in her immediate firing, Defs.' Mem. at 18-19, a reasonable jury could conclude that Soumekh has put forth sufficient evidence that the proffered reason is pretextual, and that Soumekh's gender was still a motivating

15

factor.  Cervone was the sole person who made the decision to terminate Plaintiff, and the recency of the incidents within the weeks leading up to her termination create an issue of material fact as to whether gender played a role in his termination decision.  Accordingly, the Court recommends denying Defendants' motion for summary judgment as to Plaintiff's gender discrimination claims against Cervone and LD Consulting.

Soumekh fails, however, to set forth a prima facie case for gender discrimination against Daleo.  While Soumekh alleges and submits that Daleo was aware of the messages and failed to adequately intervene, Pl. Counter. ¶ 6; *see* Plaintiff_000294, Daleo played no role in Plaintiff's termination.  Cervone fired Soumekh on the spot, and she left that day without speaking to Daleo, Defs.' 56.1 ¶ 45; Pl. 56.1 ¶ 45, meaning that she was not subject to an adverse employment action that warrants an inference of gender discrimination by Daleo.  Accordingly, the Court recommends granting Defendants' motion as to the gender discrimination claim against Daleo.

### C.    Gender and Religious Harassment Claims

Next, Defendants argue that Soumekh's sexual and religious harassment claims fail because Plaintiff welcomed the texts and memes demonstrating she did not find them subjectively hostile, they were periodic, occasional banter and the incidents alleged were not motivated by her gender or religion. Defs.' Mem. at 12-16. Soumekh disputes that she welcomed the text messages and memes, which used sex-specific terms, and instead felt "obligated to endure them," creating an issue of

material fact. Pl. Opp. 12-13. Plaintiff further argues that disputed facts exist as to incidents involving religious harassment making summary judgment also inappropriate on these claims against LD Consulting and Cervone. *Id*. at 14-16.

"Sexual harassment is actionable under Title VII only if it is 'so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270, 121 S. Ct. 1508, 1509 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 786, 118 S. Ct. 2275 (1998)). "'Sexual harassment in the workplace violates Title VII's prohibition against gender discrimination when such harassment fits into one (or both) of two paradigms: (1) quid pro quo; and (2) hostile work environment.'" *Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 385 (E.D.N.Y. 2018) (quoting *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1154 (E.D.N.Y. 2003)). Here, Soumekh alleges the latter.

In order to establish a hostile work environment, whether based on gender or religion, a plaintiff must produce evidence that "the complained of conduct: (1) 'is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex [or color or race or religion or national origin].'" *Weiss v. Hustedt Chevrolet,* No. CIV.A.05-4230, 2009 WL 2132444, at *6 (E.D.N.Y. Jul. 13, 2009) (hostile work environment claim based on religion) (quoting *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007) (hostile work environment claim based on sex)

17

(alterations in original)).   To withstand summary judgment, the plaintiff must produce evidence that "the workplace was 'so severely permeated with discriminatory intimidation, ridicule, and insult, that the terms and conditions of employment were thereby altered.'"   *Dall*, 966 F. Supp. 2d at 188-89 (quoting *Mills v. S. Conn. State Univ.*, 519 Fed. App'x 73, 74-75 (2d Cir. 2013)).   "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"   *Dash v. Consol. Sch. Dist. of New Britain,* 369 Fed. App'x 186, 189-90 (2d Cir. 2010) (quoting *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002)).   "In considering whether a plaintiff has met this burden, courts should 'examin[e] the totality of the circumstances, including:  the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance."   *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)) (alteration in original). While "[s]tray remarks and unjust supervisors are common to many workplaces, and not every unpleasant workplace is necessarily a hostile, actionable one . . . [a] jury is best-placed to evaluate whether plaintiff was subjected to a hostile work environment."   *Dash v. Bd. of Educ. of City Sch. Dist. of New York*, 238 F. Supp. 3d 375, 394 (E.D.N.Y. 2017).

To hold an employer liable for a hostile work environment under Title VII, "federal law requires the plaintiff to show 'a specific basis for imputing the conduct

creating the hostile work environment to the employer.'" *Cherry v. New York City Hous. Auth.*, 564 F. Supp. 3d 140, 182-83 (E.D.N.Y. 2021) (citing *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 91 (2d Cir. 2019) (quoting *Summa*, 708 F.3d at 124)). One basis is when a harasser is a supervisor or has "'immediate (or successively higher) authority' over plaintiff." *Dash v. Board of Educ. of City Sch. Dist. of New York*, 238 F. Supp. 3d 375, 392 (E.D.N.Y. 2017); (quoting *Faragher*, 524 U.S. at 807, 118 S. Ct. 2275; *Ellerth*, 524 U.S. at 745, 118 S. Ct. 2257). "An employee is a 'supervisor' if he is empowered 'to take tangible employment actions against the victim, . . . such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Dash*, 238 F. Supp. 3d at 386.

Unlike Title VII, individuals may be held liable for a hostile work environment claim under the NYSHRL, and "a supervisor's conduct, is generally imputed to the employer." *Cherry v. New York City Hous. Auth.*, 564 F. Supp. 3d 140, 182-83 (E.D.N.Y. 2021) (collecting cases); *see McCalla v. City of New York*, No. 15-CV-8002, 2017 WL 3601182, at *44 (S.D.N.Y. 2017) (finding that the plaintiffs established liability for their NYSHRL claim by showing that the alleged discriminatory conduct was perpetrated by a supervisor) (citing *Swiderski v. Urban Outfitters, Inc.*, No. 14-CV-6307, 2015 WL 3513088, at *5 (S.D.N.Y. Jun. 4, 2015), *report and recommendation adopted*, 2017 WL 4277182 (S.D.N.Y. Sep. 22, 2017)).[4]

---

[4] In June 2019, the New York State Legislature amended certain NYSHRL sections prohibiting harassment, discrimination and retaliation in the workplace. *See Cherry*, 564 F. Supp. 3d at 164 n.13 (citing *Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019)); *see also* A8421/S6577 (as amended by S6594/A8424). Because the amendments apply to

Applying these standards, Plaintiff satisfies her burden to establish prima facie case for a hostile work environment claim based on her gender against LD Consulting, Cervone and Daleo.  Initially, Cervone was Soumekh's supervisor as he hired her, she reported to him and he fired her, so his conduct can be imputed to LD Consulting.  Moreover, a reasonable juror could conclude that the complained of conduct—pervasive, inappropriate text messages and unwanted sexual advances at Manninos restaurant followed by her termination less than a month later by the same person—was objectively hostile.  Soumekh submits that she believed the behavior to be subjectively hostile and instructed Cervone to stop sending her messages.  Pl. Counter. ¶¶ 2, 15.  Plaintiff also contends that Daleo was aware of the text messages and memes Cervone sent to Soumekh and failed to intervene as the sole owner of the company, and the one who hired Cervone.  Def. 56.1 ¶¶ 5, 11; Pl. 56.1 ¶¶ 5, 11; Pl. Counter. ¶ 6.  Taken together, Plaintiff has submitted sufficient evidence to support a prima facie case for sexual harassment.  Accordingly, Court recommends denying summary judgment on these claims against LD Consulting, Cervone and Daleo.

As for Soumekh's hostile work environment claims based on her religion against LD Consulting and Cervone, Plaintiff also establishes a prima facie case.  Under the totality of the circumstances, a reasonable juror could conclude that the incidents based on religion—the text message, Cervone's mocking comment about "employing the Jew," and the "Jewish Lives Matters" posters—are sufficiently pervasive and hostile conduct.  Moreover, Soumekh submits that she confronted

claims accruing after October 11, 2019, the effective date, they do not apply to Plaintiff's NYSHRL claims here.  *See Cherry*, 564 F. Supp. 3d at 164 n.13 (citations omitted).

Cervone about the posters and that she found the conduct subjectively hostile and offensive.  Pl. Counter. ¶¶ 10-12.  As a result, a jury is best-suited to evaluate whether the incidents based on religion resulted in a hostile work environment that negatively altered the conditions of her work environment.  *See Dash*, 238 F. Supp. 3d at 394.  Accordingly, the Court recommends denying summary judgment on the hostile work environment claims based on religion against LD Consulting and Cervone.

### D.   Retaliation Claims

Defendants next argue that Plaintiff's retaliation claims fail because they articulated a non-retaliatory reason for her termination, namely that Soumekh and Cervone got into an argument where she accused him of "stealing" and that he subsequently fired her.  Defs.' Mem. at 18-19.  Defendants also contend that the retaliation claim against Daleo should be dismissed because she was not involved with Plaintiff's termination.  *Id*. at 22. Soumekh counters that the evidence of Cervone's harassment and Plaintiff's rejection at Mannino's and instructions to stop sending her memes demonstrate that it was "no coincidence that she was subsequently terminated."  Pl. Opp. at 18-19.  She also argues that a reasonable trier of fact could conclude that Daleo aided and abetted Cervone in his retaliation against Plaintiff because she was aware of the activity and failed to intervene.  *Id*. at 20-21.

Federal and state law retaliation claims are also examined under the *McDonnell Douglas* burden shifting test.  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).[5]  To establish a prima facie case of retaliation, a plaintiff

---

[5] As stated above, amendments to the NYSHRL concerning discrimination, harassment and retaliation claims went into effect after Plaintiff filed this lawsuit, so the Court applies the standard that mirrors

must show:  (1) participation in a protected activity; (2) the defendant's awareness of this activity; (3) an adverse employment action; and (4) a causal connection between the alleged adverse action and the protected activity.  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (citation omitted).  "The burden at the summary judgment stage for Plaintiff is 'minimal' and '*de minimis,*' and 'the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.'"  *Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp. 2d 167, 192 (E.D.N.Y. 2013) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

Protected activities include complaining about unlawful practices under Title VII.  *See* 42 U.S.C. § 2000e–2(a)(1); *Bazile v. City of New York,* 215 F. Supp. 2d 354, 363 (S.D.N.Y. 2002).  When making such a complaint, a plaintiff must be sufficiently specific so that the employer is on notice that she believes she is being discriminated against on the basis of her membership in a protected class.  *Dall*, 966 F. Supp. 2d at 193 (internal quotation omitted).  A "plaintiff must show that a reasonable employee would have found the [retaliatory conduct] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006).  Moreover, "'[a] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that

---

Title VII for Soumekh's state retaliation claims.  *See Cherry*, 564 F. Supp. 3d at 164 n.13 (citations omitted).

22

the protected activity was closely followed in time by the adverse employment action.'" *Dall*, 966 F. Supp. 2d at 194 (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110-11 (2d Cir. 2010) (alteration omitted)).

Once plaintiff succeeds in establishing a prima facie case, then a presumption of retaliation arises, and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was unlawful. *Dall*, 966 F. Supp. 2d at 192 (E.D.N.Y. 2013) (internal citation and quotation omitted). If the employer succeeds at the second stage, then the presumption of retaliation dissipates, and the plaintiff must show that, "but for the protected activity," she would not have faced the adverse employment action. *Id*. (citing *Nassar,* 570 U.S. at 362, 133 S. Ct. at 2534 (holding that a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer")).

Applying these standards, Plaintiff establishes a prima facie case for gender retaliation against LD Consulting and Cervone. Initially, Soumekh submits that she asked Cervone to stop sending her unwanted text messages on several occasions including one week prior to her termination although she fails specify what was said. *See* Pl. Counter. ¶¶ 2, 5, 15. A reasonable jury could consider these complaints as protected activity that serves as the basis for her gender retaliation claim and that Cervone had sufficient notice. Moreover, the complained of conduct and adverse employment action are close in time as these complaints and the incident at Manninos restaurant occurred less than a month prior to her termination. This proximity is sufficient to establish causal connection between the protected activity

and her firing. *Kim v. Columbia Univ.,* 460 Fed. Appx. 23, 25 (2d Cir. 2012) ("[T]emporal proximity between protected activity and adverse action may be sufficient to satisfy the causality element of a prima facie retaliation claim . . . ."). As a result, a rational fact finder could infer a retaliatory motive as to Cervone's decision to fire Plaintiff.

Under the burden-shifting framework set forth above, Defendants have proffered a legitimate, non-retaliatory reason for Soumekh's termination, namely that she accused Cervone of "stealing" and he fired her on the spot. *See* Defs.' Mem. at 18-19. A reasonable juror, however, could conclude that Defendants' reason for termination was a pretext for unlawful conduct given the proximity of the complained of conduct to her termination coupled with the fact that Cervone made the decision to fire her. Accordingly, the Court recommends denying Defendants' motion as to the retaliation claims against LD Consulting and Cervone.

Plaintiff fails, however, to set forth a prima facie case for retaliation against Daleo. While Soumekh contends that Daleo was aware of the text messages and failed to adequately intervene, Pl. Counter. ¶ 6, Daleo played no role in Plaintiff's termination as Cervone fired her on the spot, and Soumekh left that day without speaking to her. Defs.' 56.1 ¶ 45; Pl. 56.1 ¶ 45. Accordingly, the Court recommends granting Defendants' motion as to Plaintiff's retaliation claim against Daleo, the last cause of action.

## IV.   CONCLUSION

For the reasons set forth above, the Court recommends granting Defendants' motion as to the gender discrimination and retaliation claims against Daleo, Soumekh's 13th and 15th causes of action, and denying the motion on all other grounds such that the following claims proceed to trial:   (i) Title VII gender discrimination against LD Consulting; (ii) Title VII gender harassment against LD Consulting; (iii) Title VII religious harassment against LD Consulting; (iv) Title VII retaliation against LD Consulting; (v) NYSHRL gender discrimination against LD Consulting; (vi) NYSHRL gender harassment against LD Consulting; (vii) NYSHRL religious harassment against LD Consulting; (viii) NYSHRL retaliation against LD Consulting; (ix) NYSHRL gender discrimination against Cervone; (x) NYSHRL gender harassment against Cervone; (xi) NYSHRL religious harassment against Cervone; (xii) NYSHRL retaliation Cervone; (xiii) NYSHRL gender harassment against Daleo.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. 22 Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
     August 10, 2022

                                        /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge